**George MERCER, Petitioner,**

v.

**William ARMONTROUT, Warden, Missouri State Penitentiary, Respondent.**

**No. 88–2547.**

United States Court of Appeals, Eighth Circuit.

Dec. 30, 1988.

Douglas S. Laird, Kansas City, Mo., for appellant.

John M. Morris, Asst. Atty. Gen., Jefferson City, Mo., for appellee.

Before LAY, Chief Judge,
McMILLIAN and ARNOLD, Circuit Judges.

LAY, Chief Judge.

George Mercer was convicted of capital murder in the state courts of Missouri and sentenced to death. The conviction and sentence were subsequently affirmed by the Supreme Court of Missouri, *State v. Mercer*, 618 S.W.2d 1 (Mo.), *cert. denied*, 454 U.S. 933, 102 S.Ct. 432, 70 L.Ed.2d 240 (1981), and Mercer was later denied relief in state post-conviction proceedings. *Mercer v. State*, 666 S.W.2d 942 (Mo.App.1984). This court affirmed the denial by the feder-

al district court of his petition for a writ of habeas corpus. *Mercer v. Armontrout,* 844 F.2d 582 (8th Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 249, 102 L.Ed.2d 238 (1988). Shortly after the Supreme Court of the United States denied certiorari, the Supreme Court of Missouri set October 20, 1988, at 12:01 a.m., as the new date for execution of sentence. Mercer filed a second petition for a writ of habeas corpus in the district court for the Western District of Missouri on October 13, 1988. The district court summarily dismissed this petition and denied Mercer's request for a stay of execution. *Mercer v. Armontrout,* 701 F.Supp. 1460 (W.D.Mo.1988). An appeal was filed in this court and a motion to stay the execution was likewise filed. The motion was assigned to the original panel members who had passed on the first habeas case. The motion to stay the execution was temporarily granted because it was presented to the panel of this court at a time when court was in session and it was impossible for the three judges to adequately review the material prior to the designated time of the execution. *Mercer v. Armontrout,* No. 88–2547–WM (8th Cir. Oct. 19, 1988).

Petitioner's second petition for a writ of habeas corpus raised several new issues relating to ineffective assistance of counsel. The court's preliminary concern was whether Mercer's new petition stated issues worthy of granting a certificate of probable cause. After studied analysis we have now determined that a certificate of probable cause should not issue in the present case. However, this is a capital case and the State has questioned certain procedural processes of this court in issuing our initial stay order. Accordingly, it is important to initially discuss standards concerning a federal court's review of motions to stay state warrants of execution.

Human life is our most precious possession. Our natural instincts guide us from birth to sustain life by protecting ourselves and protecting others. All notions of morality focus on the right to live and all of man's laws seek to preserve this most important right. When presented with challenges to a capital sentence, it would be easy to respond rhetorically by asking, "what about the victim whom the defendant has been found guilty of unmercifully killing." But this approach fails to reflect on the ideal that a government founded by a moral and civilized society should not act as unmercifully as the defendant is accused of acting. If the original murder cannot be justified under man's laws, it is equally unlawful and inhumane to commit the same atrocity in the name of the state. What separates the unlawful killing by man and the lawful killing by the state are the legal barriers that exist to preserve the individual's constitutional rights and protect against the unlawful execution of a death sentence. If the law is not given strict adherence, then we as a society are just as guilty of a heinous crime as the condemned felon. It should thus be readily apparent that the legal process in a civilized society must not rush to judgment and thereafter rush to execute a person found guilty of taking the life of another.

## I. Granting Stay of Execution

 The initial point of inquiry in granting or denying a stay of execution in a death case must be whether the petition is frivolous. If the petition is not frivolous on its face, the *very essence of this court's duty is to study and research the points raised.* The severity and finality of the death penalty requires the utmost diligence and scrutiny of the court. In capital cases the law is uniquely complex and difficult to understand. No judge can digest, retain, or apply these principles to a voluminous state court record without reflective study and analysis. To suggest that a life or death decision can be made by simply reading a petition is to advocate dereliction of judicial duty. The penalty has already been rendered and approved by the highest court of the state in which the crime has been committed. However, as worthy as state courts may be, the state process does not always ensure constitutional process.[1]

**1.** Since its decision in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972),

Experience has long demonstrated that human judgment rendered through judicial process is not infallible. As long as federal habeas review exists, it is the duty of federal judges to make certain that an individual does not forfeit his life at the hands of the state unless the state process lawfully rendered the punishment, it complied with federal constitutional standards, and the defendant was furnished with competent and effective representation within the norms required by the sixth amendment. Regardless of how heinous the crime, no one may reasonably question that a predicate to carrying out a death sentence is careful review of the constitutionality of the defendant's conviction and sentence.

The State is critical of our granting an emergency stay in this case. We reject this criticism because it advocates execution of a death sentence without this court's reflective study of the issues raised in this case. It is a far greater tragedy to permit an unlawful execution than to delay a state's death warrant a few weeks to ensure that an irreparable mistake does not occur.

## II. Repetitive Petitioning and Appointed Counsel

The State urges that habeas petitioners may "abuse" the writ by filing repetitive or "successive" petitions.[2] It is often asserted that in death cases repetitive writs present motions to stay and that such procedural tactics are used to merely prolong the inevitable. Notwithstanding this possibility, "[t]he consequences of injustice—loss of liberty and sometimes loss of life—are far too great to permit the automatic application of an entire body of technical rules whose primary relevance lies in the area of civil litigation." *Sanders v. United States*, 373 U.S. 1, 24, 83 S.Ct. 1068, 1082, 10 L.Ed.2d 148 (1963) (Harlan, J., dissenting). Concerns for comity to a sovereign state and finality to its judgments do not outweigh the absolute need to protect against the deprivation of an individual's constitutional rights which might invalidate the capital sentence.

The apparent question is whether there exists sufficient means within the frame-

the Supreme Court has vacated the sentence, or has affirmed the vacation of sentence, in roughly half of the death penalty cases in which it has granted certiorari. *See, e.g., Thompson v. Oklahoma*, — U.S. —, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988); *Maynard v. Cartwright*, — U.S. —, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988); *Satterwhite v. Texas*, — U.S. — 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988); *Sumner v. Shuman*, 483 U.S. 66, 107 S.Ct. 2716, 97 L.Ed.2d 56 (1987); *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987); *Gray v. Mississippi*, 481 U.S. 648, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987); *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987); *Ford v. Wainwright*, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986); *Skipper v. South Carolina*, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986); *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982); *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981); *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980); *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980); *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980); *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *Bell v. Ohio*, 438 U.S. 637, 98 S.Ct. 2977, 57 L.Ed.2d 1010 (1978); *Coker v. Georgia*, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977); *Roberts v. Louisiana*, 431 U.S. 633, 97 S.Ct. 1993, 52 L.Ed.2d 637 (1977); *Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977); *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976); *Roberts v. Louisiana*, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed. 2d 974 (1976); *Moore v. Illinois*, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972); *Stewart v. Massachusetts*, 408 U.S. 845, 92 S.Ct. 2845, 33 L.Ed.2d 744 (1972); *Crampton v. Ohio*, 408 U.S. 941, 92 S.Ct. 2873, 33 L.Ed.2d 765 (1972).

**2.** It bears noting that the terms "successive petition" and "abuse of the writ" have different meanings:

> A "successive petition" raises grounds identical to those raised and rejected on the merits on a prior petition. See *Sanders v. United States*, 373 U.S., at 15–17 [83 S.Ct. at 1077–78]. * * * The concept of "abuse of the writ" is founded on the equitable nature of habeas corpus. Thus, where a prisoner files a petition raising grounds that were available but not relied upon in a prior petition, or engages in other conduct that "disentitle[s] him to the relief he seeks," the federal court may dismiss the subsequent petition on the ground that the prisoner has abused the writ. *Id.,* at 17–19 [83 S.Ct. at 1078–79].

*Kuhlmann v. Wilson*, 477 U.S. 436, 444 n. 6, 106 S.Ct. 2616, 2622 n. 6, 91 L.Ed.2d 364 (1986).

work of the law to prevent vexatious delay resulting from state prisoners who seek to abuse the writ. In considering this question, certain preliminary factors must be taken into account. First, it must be recognized that a convicted defendant sentenced to death will attempt to assert every means available to prevent his execution. The instinctive human desire to live accounts for the proliferation of petitions for writs and stays. Nothing short of a complete bar to such petitions will prevent their continued filings.

Second, lawyers should not be faulted for their services to indigent condemned prisoners in attempting to set aside a capital sentence. Courts appoint lawyers to serve these prisoners to assure that no condemned person shall die by reason of an unconstitutional process. It is important to understand the serious nature of the voluntary service involved. The American Bar Association has initiated, and the Judicial Conference of the United States has supported, the establishment of Death Penalty Resource Centers. The purpose of these Centers is to increase the availability of competent attorneys to review the state processes and assure competent and effective representation of individuals sentenced to death. This project is inspired by the fact that competent representation is difficult to secure. The scarcity of volunteers among lawyers is understandable considering the fact that the average time that a competent lawyer labors in post-conviction review of a single death sentence is approximately one-quarter of a lawyer's billable hours for one year. These lawyers receive little or no compensation for this service.

■ It is essential to remember that counsel is appointed to ensure the preservation of the defendant's constitutional rights and to make certain that unlawful executions do not occur. The procedural mechanism for reviewing these petitions must strive to promote these same principles. The federal judiciary must therefore take particular care in death penalty cases to give patient and thoughtful review of claims presented by petitioners through their appointed counsel.

## III. Procedural Barriers

Once an initial petition for a writ of habeas corpus has been fully processed by a federal court, a state prisoner must comply with certain procedural prerequisites before obtaining subsequent federal review of any constitutional claims relating to his conviction or sentence. A fundamental requirement contained in these procedures is that a state prisoner must exhaust his state court remedies. Assuming a defendant has filed one state court post-conviction petition before filing a petition in federal court, the doctrine requiring exhaustion of an existing state court remedy becomes inapplicable in light of the fact that generally no state court remedy exists.

The next procedural barrier a prisoner must confront is the rule which precludes federal review of issues if there has been a procedural default by the prisoner on those issues in the state court. *Wainwright v. Sykes*, 433 U.S. 72, 86–87, 97 S.Ct. 2497, 2506–07, 53 L.Ed.2d 594 (1977). Thus a petitioner cannot assert a claim of constitutional error at trial if he did not contemporaneously object at trial. Furthermore, the petitioner cannot assert claims of constitutional error on his appeal if the issue was omitted on the state court appeal. *Smith v. Murray*, 477 U.S. 527, 533, 106 S.Ct. 2661, 2665, 91 L.Ed.2d 434 (1986). *See also Stokes v. Armontrout*, 851 F.2d 1085, 1092 (8th Cir.1988) (application of "cause and prejudice" rules in federal habeas proceeding when petitioner's counsel failed to raise constitutional claims in state post-conviction proceeding). The procedural by-pass rule is said to promote finality and deference to the procedure of the state court. *Smith v. Murray*, 477 U.S. at 533, 106 S.Ct. at 2665.

Two exceptions exist, however, to the procedural by-pass rule. First, the existence of both "cause" and "prejudice" may excuse the procedural default in state court. Cause is an ill-defined term over which federal judges have debated. Generally, cause can be established if some extrinsic circumstances prevented counsel from raising the issue. The usual example

is the emergence of a new principle of constitutional law previously unrecognized at the time of the state court proceeding. *Reed v. Ross,* 468 U.S. 1, 18, 104 S.Ct. 2901, 2911, 82 L.Ed.2d 1 (1984). Cause may also be established by a sixth amendment violation of ineffective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Kimmelman v. Morrison,* 477 U.S. 365, 380–82, 106 S.Ct. 2574, 2586–87, 91 L.Ed.2d 305 (1986). Once cause is established, "actual" prejudice must be separately proven. *See United States v. Frady,* 456 U.S. 152, 168, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982); *Engle v. Isaac,* 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed. 2d 783 (1982).

The other exception to *Sykes* now appears in *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) and *Smith v. Murray,* 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986). The procedural default rule can be avoided if a fundamental miscarriage of justice has occurred where "the alleged error undermined the accuracy of the guilt or sentencing determination." *Smith v. Murray,* 477 U.S. at 539, 106 S.Ct. at 2669. *See also Murray v. Carrier,* 477 U.S. at 496, 106 S.Ct. at 2650.

Before ineffective assistance of counsel may be used to obviate a state procedural by-pass rule, *actual prejudice* must be shown. This requires a demonstration of "a reasonable probability that, absent the [attorney's] errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland v. Washington,* 466 U.S. at 695, 104 S.Ct. at 2068–69. In dealing with the prejudice portion of the cause and prejudice test under *Sykes,* the Supreme Court has clearly required a showing of actual prejudice as well as the demonstration of cause. *Murray v. Carrier,* 477 U.S. at 495, 106 S.Ct. at 2649. *See also Engle v. Isaac,* 456 U.S. at 110, 102 S.Ct. at 1563. The terms in *Sykes* are therefore not dissimilar to *Strickland's* prejudice test for ineffective assistance of counsel.

*Cf. United States v. Frady,* 456 U.S. at 167–68, 102 S.Ct. at 1594–95; *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977). Similarly, in *Kuhlmann v. Wilson,* 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986), the court observed that the "ends of justice" standard involved in review of successive petitions for a writ requires a showing of a constitutional claim with a colorable showing of factual innocence. Id. at 444–45, 106 S.Ct. at 2622 (citing *Sanders v. United States,* 373 U.S. at 15, 16–17, 83 S.Ct. at 1077–78). Although each of the tests relating to actual prejudice are raised in a different context or stage in presenting habeas claims, it is readily apparent that the same core concern pervades the ultimate requirement for a habeas petitioner to succeed.[3]

█ In a repetitive filing of a habeas petition of claims that have not been previously submitted, the petitioner faces the implicit barrier of a bevy of procedural by-pass rules. In the present case, for example, Mercer raises claims of ineffective assistance of trial counsel which he has not raised before in either his state or federal post-conviction proceedings. Before we may review the merits of those claims, we must question whether there was cause and prejudice in his failure to raise these issues in his state post-conviction claims or his first federal habeas petition. *Cf. Stokes v. Armontrout,* 851 F.2d at 1092. This raises the question of whether his counsel for the post-conviction proceedings was ineffective and caused him prejudice in not raising these claims. *See, e.g., Gilmore v. Armontrout,* 861 F.2d 1061, 1063–64 (8th Cir.1988); *Stokes v. Armontrout,* 851 F.2d at 1092–96. Petitioner has made no showing that his first trial counsel in the state post-conviction proceeding or his trial counsel in the first habeas proceeding was ineffective under *Strickland* standards. Nor has petitioner demonstrated a fundamental miscarriage

**3.** There are of course important distinctions implicit to the Court's rulings in *Sykes* and *Strickland.* However, for the reasons previously discussed regarding the developments of *Sykes* under *Smith* and *Carrier,* the concerns behind the ineffective assistance of counsel standard have become intertwined in the process of determining procedural bar.

of justice to obviate the cause and prejudice standard. *See Smith v. Murray,* 477 U.S. at 539, 106 S.Ct. at 2669.

## IV. Certificate of Probable Cause

The Supreme Court has held that procedural default must be enforced in *all* cases "devoid" of a constitutional claim which "undermined the accuracy of the guilt or sentencing determination." *Smith v. Murray,* 477 U.S. at 539, 106 S.Ct. at 2669. We have reviewed Mercer's claims to determine whether the accuracy of his guilt and sentencing determinations are prejudically undermined by his belated constitutional claims. To attain a certificate of probable cause, a petitioner must present constitutional claims that are at least debatable among reasonable jurists. *Barefoot v. Estelle,* 463 U.S. 880, 893 n. 4, 103 S.Ct. 3383, 3394 n. 4, 77 L.Ed.2d 1090 (1983). In his application, Mercer claims that the prosecution withheld mitigating evidence, the "depravity of mind" instruction was unconstitutional, and he received ineffective assistance of counsel in several particulars.

### A. Prosecution Withheld Mitigation Evidence

■ Mercer contends that the prosecution withheld evidence that the victim had engaged in the illegal use and sale of drugs. He argues that this evidence could prove that her death was caused by drugs or, in the alternative, by John Campbell with whom she associated due to her involvement with drugs. This argument cannot succeed. As the district court observed, the cause of death was disputed at trial. Mercer claimed that the medical report made on the victim's death was inconclusive and inconsistent. He further argued that John Campbell actually murdered the victim. Consequently, it cannot be urged that presentation of the evidence in question would have led to a theory or defense which had not been presented at trial. Moreover, while evidence that the

victim used and distributed drugs might have supported these contentions, that support at best would have had minimal influence. The jury determined beyond a reasonable doubt that Mercer strangled the victim to death. Because there is ample evidence in the record to support the jury's finding, it would be unreasonable to conclude that presentation of the allegedly withheld evidence would have led to a different outcome.

### B. Depravity of Mind Instruction

■ Mercer also contends that the depravity of mind instruction, provided to the jury on the issue of aggravating circumstances, was unconstitutionally vague. While the instruction has been previously reviewed and upheld on the basis of *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), he argues that the Supreme Court has recently redefined the law in this area. In *Maynard v. Cartwright,* —— U.S. ——, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), the Court held that the language "especially heinous, atrocious, or cruel" provided inadequate guidance for sentencing and was therefore unconstitutional. *Id.,* 108 S.Ct. at 1859. However, *Cartwright* is clearly an application, rather than an expansion, of *Godfrey. Id.* 108 S.Ct. at 1858–59. The constitutionality of the Missouri instruction therefore remains intact. As required by *Godfrey,* the jury's determination on this issue was properly reviewed by the appellate court. *State v. Mercer,* 618 S.W.2d at 10–11. Furthermore, the instruction required that in addition to outrageous or wanton and inhuman conduct, there must be a finding of depravity of mind.[4] This requirement distinguishes the instant case from *Cartwright,* in which the instruction only required a general finding that the murder was "especially heinous, atrocious, or cruel."[5] Thus, the instruction, viewed in the light most favorable to Mercer's claim, did not undermine the accuracy of the sentencing determination.

---

**4.** The instruction reads "[i]n determining the punishment to be assessed against the defendant for the murder of Karen Keeton, you must first unanimously determine that ... the murder of Karen Keeton involved depravity of mind and that as a result thereof it was outrageously or

wantonly vile and inhuman." Mo.Rev.Stat. § 565.012.2(7) (repealed).

**5.** In any event, the issue of whether *Cartwright* alters the law as stated in *Godfrey* is immaterial since the jury also found an additional aggravat-

## C. Ineffective Assistance of Counsel

Finally, Mercer raises a host of claims of ineffective assistance of trial counsel in his second habeas petition. Mercer argues that these claims were not contained in the initial petition because he was at that time still represented by trial counsel, Cenobio Lozano, who failed to allege ineffective assistance of counsel as the result of the obvious conflict of interest. However, assuming this to be true, upon review of the record, these claims do not in any way demonstrate a colorable showing of actual innocence or that the sentencing process was undermined.

Mercer contends that counsel erred in failing to discover and present evidence relating to the victim's alleged illegal use and sale of drugs. Further, he asserts error in counsel's failure to present a forensic pathologist to testify regarding the condition of the victim's body.[6] As previously stated, it is highly improbable that evidence of this sort would have changed the outcome of the trial. The failure to present such evidence was not sufficiently prejudicial to Mercer's case to find ineffective assistance of counsel.

Mercer also alleges that counsel erred in recommending that he waive instructions on lesser included offenses, namely, the first degree murder and felony-murder instructions. The Missouri Court of Appeals found that Mercer and his counsel had expressly waived these instructions. *Mercer v. State*, 666 S.W.2d at 945–47. The trial transcript clearly demonstrates that Mercer on two separate occasions knowingly and willingly waived these instructions. No prejudice exists under these circumstances.

Finally, Mercer asserts that counsel erred in failing to develop and present evidence of mitigating circumstances. In particular, he argues that counsel should have pursued a theory of diminished capacity due to the consumption of alcohol. Although there is evidence that indicates Mercer had consumed alcohol at the time of the murder, there is nothing in the record demonstrating that he was intoxicated. In fact, there is considerable evidence supporting the jury's conclusion that Mercer's conduct was performed in a sober and calculated manner. It is clear that Mercer was not prejudiced by counsel's decision not to pursue a defense based on alcohol consumption. It would be unreasonable to conclude that the presentation of this mitigation evidence, either during the trial or in the sentencing phase, would have altered Mercer's fate in these proceedings.

Mercer's second petition for a writ of habeas corpus has failed to demonstrate any substantial claim which, if true, would have undermined the accuracy of the guilt or sentencing determination. A certificate of probable cause is denied and this court's previous order to stay execution of the sentence is ordered vacated. Leave to appeal in forma pauperis is denied and the appeal is dismissed. The mandate shall issue forthwith.

---

ing circumstance based on an agency theory. *Mercer v. Armontrout*, 844 F.2d at 584. Under Missouri law, a death sentence need not be vacated if only one of several aggravating circumstances is found deficient. *Id.*

6. It must be noted that counsel did present testimony from Charles Pottinger who, while not a forensic pathologist, is a technician with the Kansas City Police Department and capable of expert comment on the physical evidence in this case.