733 F.Supp. 1334 (1990)
Maurice Oscar BYRD, Petitioner,
v.
Paul DELO, etc, et al., Respondents.
No. 90-507C(1).
United States District Court, E.D. Missouri, E.D.
March 26, 1990.
*1335 *1336 Burton Shostak, Deborah Kerns, Moline, Oettsen, Mauze, Leggat & Shostak, Clayton, Mo., for petitioner.
John Morris, Stephen Hawke, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

MEMORANDUM
NANGLE, Chief Judge.
Petitioner brings the instant habeas petition seeking a stay of execution and a hearing on the merits of his petition. Because, however, this is petitioner's second federal habeas petition[1], the Court must first determine whether petitioner is procedurally or equitably barred from pursuing the claims in this petition. See Mercer v. Armontrout, 864 F.2d 1429, 1433 (8th Cir. 1988).
Federal Habeas Corpus Rule 9(b) provides:

Successive petitions. A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits, or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.
In Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), the United States Supreme Court distinguished successive petitions that rely on grounds previously heard ("repetitive claims") from second petitions containing new claims ("new claims"). Id. 373 U.S. at 15-19, 83 S.Ct. at 1077-79. Different principles govern the disposition of repetitive claims and new claims. Id. Petitioner's successive petition asserts eight separate alleged bases for relief (Grounds A-H).[2] Of these claims, three are conceded to be "repetitive" and the remaining five are allegedly "new". Because petitioner's successive petition contains both types of claims, the Court will address petitioner's repetitive claims and the standard for their disposition separately from petitioner's new claims.

I. Repetitive Claims

In Sanders v. United States the Supreme Court held that a court must give *1337 controlling weight to the denial of a prior application for federal habeas corpus if:
(1) the same ground presented in the subsequent application was determined adversely to the applicant on the prior application;
(2) the prior determination was on the merits; and
(3) the ends of justice would not be served by reaching the merits of the subsequent application.
Id. at 15, 83 S.Ct. at 1077. It is petitioner's burden to show that, "although the ground of the new application was determined against him on the merits on a prior application, the ends of justice would be served by a redetermination of the ground." Id. at 17, 83 S.Ct. at 1078. If a purely legal question is involved, an intervening change in the law may justify a new hearing. Id. A petitioner must, however, show something more than mere disagreement with the prior disposition. Walker v. Lockhart, 726 F.2d 1238, 1250 (8th Cir.1984) (en banc) (Arnold J., concurring). Finally, in Kuhlmann v. Wilson, 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986), a plurality of the Supreme Court held that "ends of justice" requires the petitioner ultimately to supplement his claim with "a colorable showing of factual innocence." Id. 477 U.S. at 454, 106 S.Ct. at 26. Because of the split among the justices deciding Kuhlman, courts have interpreted Kuhlman to mean, at the very least, that "a colorable showing of factual innocence" is a factor to be weighed in determining whether a petitioner has met his burden of proof. See Sulie v. Duckworth, 864 F.2d 1348, 1353 (7th Cir.1988), cert. denied, ___ U.S. ___, 110 S.Ct. 93, 107 L.Ed.2d 58 (1989); Williams v. Lockhart, 862 F.2d 155, 158 (8th Cir.1988). But see, McDonald v. Blackburn, 806 F.2d 613, 622 n. 9 (5th Cir.1986) (following plurality in Kuhlman), cert. denied, 481 U.S. 1070, 107 S.Ct. 2465, 95 L.Ed.2d 874 (1987); Branion v. Gramly, 855 F.2d 1256, 1260 (7th Cir.1988) (petitioner must make "colorable showing"), cert. denied, ___ U.S. ___, 109 S.Ct. 1645, 104 L.Ed.2d 160 (1989).
Petitioner concedes that Grounds E, F and H were raised in one form or another in his initial habeas petition and that the first two Sanders inquiries must be answered in the affirmative. Thus, this Court will limit its discussion of each of petitioner's repetitive claims to whether the "ends of justice" would be served by reaching the merits of these claims.

A. GROUND "E"
Ground E of petitioner's successive application alleges that petitioner's trial counsel was ineffective under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), because he called Oscar Ford to testify on behalf of petitioner at trial. An identical claim was raised in petitioner's original federal habeas corpus petition. Petitioner argues, however, that he does not merely disagree with the prior disposition of this Court and the Eighth Circuit regarding this issue. Rather, petitioner argues that this Court and every other court that has considered this instance of alleged ineffective assistance of counsel has focused on rationale for trial counsel's actions that was not offered by trial counsel himself, but, rather, proffered by the court as an explanation for trial counsel's action. Petitioner insists that this Court must look only to the reasons proffered by trial counsel in determining "reasonableness" under Strickland.
Despite petitioner's protestations, this Court cannot characterize petitioner's argument as anything other than a disagreement with this Court's prior disposition of petitioner's claim as well as the disposition of every court that has heard this claim. Furthermore, this Court is not satisfied that petitioner has supplemented this claim with "a colorable showing of factual innocence." Finally, this Court would note that in his first petition as well as the instant application, petitioner challenges decisions of trial counsel that were purely strategic in nature. An attorney who makes a decision in the heat of a trial in order to salvage a faltering criminal defense cannot be said to have performed "deficiently" solely on the basis of hindsight that the decision MAY have backfired; this Court has yet to see the perfectly tried case, be it civil or *1338 criminal. When trial counsel ultimately succeeds by a calculated trial tactic, his decision is heralded as a stroke of genius. His innovation is laudable. When, however, his last ditch attempts fail, his actions are viewed as "improvident" and he becomes a scapegoat. Under either scenario, hindsight is twenty-twenty. Hindsight, however, can play no role in determining the reasonableness of an attorney's actions for our purposes.[3]See Strickland v. Washington, 466 U.S. at 687-691, 104 S.Ct. at 2064-67. Ground E will be dismissed.

B. GROUND "F"
In Ground F petitioner seeks again to raise a challenge to the jury on the basis that he is a black man and that he was tried by an all white jury. In his first application, petitioner raised a claim under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and sought discovery of statistical evidence to establish a claim under Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). This Court held that Batson could not be applied retroactively to petitioner and that petitioner did not adequately allege a Swain violation. Byrd v. Armontrout, 686 F.Supp. 743, 776-777 (E.D.Mo.1988). This Court further held that, in any event, petitioner was procedurally barred from pursuing a Swain claim. Id. Nonetheless, petitioner now asserts that the Missouri Court of Appeals did rule on the merits of a Swain challenge, see Byrd v. State, 723 S.W.2d 37, 42 (Mo.App.1986), and that this Court, therefore, should not have resolved this point against petitioner on the basis of procedural default.
Again, this Court can only characterize petitioner's argument as a disagreement with this Court's prior disposition of petitioner's claim. Petitioner alleges no new factual evidence. He does not allude to some intervening change in the law. He simply disagrees with this Court's determination that a Swain claim was procedurally barred. Furthermore, this Court disposed of petitioner's claim on the basis of procedural default, as well as on the basis that petitioner failed to state a claim under Swain. Finally, the Court again notes that petitioner has failed to supplement his claim with "a colorable showing of factual innocence." Accordingly, Ground F will be dismissed.

C. GROUND H
In Ground H petitioner claims that he was constructively denied the right to offer mitigating evidence of good character, which the jury could have considered during the sentencing phase of petitioner's trial. Although it is not clear from petitioner's brief, petitioner indicated during oral argument that at trial, he wished to offer evidence that one month before the crime in question he had aided police in solving a burglary. Petitioner objects to the trial court's ruling that if petitioner attempted to introduce such evidence of good character, the state would be entitled to offer evidence of bad character. Petitioner argues that this ruling left him with a "Hobson's choice", and constructively denied him the opportunity to present all mitigating evidence in violation of Penry v. Lynaugh, ___ U.S. ___, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).
As a threshold matter, this Court must note that acceptance of petitioner's argument would mark such a departure from existing law that it would certainly create a "new rule" within the meaning of Teague v. Lane, ___ U.S. ___, 109 S.Ct. 1060, 103 *1339 L.Ed.2d 334 (1989).[4] New rules cannot be announced or applied on collateral review except under certain exceptional circumstances, which do not appear in the instant case. Id. See also Butler v. McKellar, ___ U.S. ___, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990); Penry v. Lynaugh, ___ U.S. ___, 109 S.Ct. 2934, 106 L.Ed.2d 256. Insofar as petitioner suggests that Penry v. Lynaugh constitutes an intervening change in the law that justifies this new approach to an argument raised in previous federal habeas corpus proceedings[5], petitioner cannot succeed. Even if Penry stood as clear authority for petitioner's argument regarding mitigating circumstances, which it does not, Penry simply applies, as petitioner recognizes, the principles announced in Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), and Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), all of which were decided in advance of petitioner's direct appeal and well before petitioner's first federal habeas corpus application. Thus, the principles from Penry that petitioner relies upon could hardly be characterized as "intervening changes in the law." Finally, petitioner has failed to suggest "a colorable showing of factual innocence". Accordingly, Ground H of petitioner's successive petition will be dismissed.

I. New Claims

When a second federal habeas petition raises claims that were not raised in the original petition but could or should have been raised, a court must examine the claims for "abuse of the writ". Sanders v. United States, 373 U.S. at 17, 83 S.Ct. at 1078; Smith v. Armontrout, 888 F.2d 530, 540 (8th Cir.1989). It is the government's burden to plead abuse of the writ. Sanders, 373 U.S. at 17, 83 S.Ct. at 1078. Once pleaded, the burden then shifts to the petitioner to show that no abuse of the writ has occurred. Williams v. Lockhart, 862 F.2d at 159. If a petitioner deliberately withholds a claim on his first application, and the claim then appears on a successive application, it will be dismissed as an abuse of the writ. Id. 373 U.S. at 18, 83 S.Ct. at 1078. In cases that do not involve a deliberate withholding, petitioner must make the same showing required to avoid procedural default under Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Smith, 888 F.2d at 541. That is, petitioner must show "cause" excusing the procedural default and "prejudice" resulting from the omission. Id. If petitioner is unable to show "cause", Murray v. Carrier 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), holds that he can still avoid a procedural bar to the new claim if he shows that the "constitutional violation [claimed] has probably resulted in the conviction of one who is actually innocent...." Id. See also Smith v. Armontrout, 888 F.2d at 541; Harper v. Nix, 867 F.2d 455, 457 (8th Cir.1989).
"Cause" requires a showing that "some objective factors external to the defense impeded counsel's efforts to comply with the state procedural rule." Harper v. Nix, 867 F.2d at 456. "[A]ttorney error or inadvertence short of ineffective assistance of counsel does not constitute `cause'". Id. Ineffective assistance of counsel, however, can establish cause. Mercer v. Armontrout, 864 F.2d 1429, 1434 (8th Cir.1988). With respect to "prejudice", petitioner must show actual prejudice.[6]Id. "Actual prejudice" with respect to a conviction arises when absent the errors, the factfinder would have had a reasonable doubt respecting guilt. Strickland, *1340 466 U.S. at 695, 104 S.Ct. at 2068. With respect to an allegedly infirm death sentence, actual prejudice exists when absent the errors, there is a reasonable probability that the sentencer would have concluded that the balance of aggravating and mitigating circumstances did not warrant death. Id.
The approach of Wainwright v. Sykes and Murray v. Carrier, however, does not apply when claims were not available at the time of the original petition. Smith v. Armontrout, 888 F.2d at 541. Where an intervening change in the law has occurred or new facts that were not reasonably discoverable at an earlier time come to light, a court must consider other factors. Id. For newly discovered evidence to warrant federal habeas corpus relief, the petitioner must show that such evidence "would probably produce an acquittal on retrial." Mastrian v. McManus, 554 F.2d 813, 822-823 (8th Cir.1977). With respect to intervening changes in the law, however, the petitioner must first overcome the retroactivity bar of Teague v. Lane and its progeny. In Teague v. Lane, 109 S.Ct. 1060, the Supreme Court severely limited the announcement and application of "new rules" on collateral review. "[A] case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government," or "if the result was not dictated by precedent existing at the time the defendant's conviction became final." Id. 109 S.Ct. at 1070. Thus, when a state court makes a reasonable, good-faith interpretation of existing precedents that is shown to be contrary to later decisions, those later decisions cannot be applied on collateral review. Butler v. McKellar, 110 S.Ct. at ___. There are two exceptions to Teague's retroactivity rule: (1) the new rule "places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe"; and (2) the new rule "requires the observance of those procedures that are implicit in the concept of ordered liberty." Teague, 109 S.Ct. at 1073. If either circumstance exists, the rule must be applied retroactively. Although a petitioner may rely on a recent decision on collateral review if the decision does not announce a new rule, it is doubtful that any case that fails to announce a "new rule" within the meaning of Teague could qualify as an "intervening change in the law".[7]
In response to each of petitioner's new claims in the instant case, the government pleads that these claims constitute an abuse of the writ and that they are procedurally barred. Thus, petitioner bears the burden of showing that no abuse of the writ has occurred. Of petitioner's new claims, only Grounds A and G could arguably be based upon intervening changes in the law. Grounds B, C and D are based upon constitutional principles that were established well in advance of petitioner's appeals. Therefore, the Court will address first Grounds B, C and D of petitoner's successive application before considering Grounds A and G.

A. GROUND "B"
In Ground B petitioner alleges that the government relied on testimony obtained in violation of Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) in obtaining his conviction. Specifically, petitioner alleges that the testimony of O.C. Green and James Mydell with reference to petitioner's confessions should have been excluded under *1341 Massiah because Green and Mydell were government "plants" in petitioner's prison cell in Georgia. Petitioner fails to offer any justification for his failure to raise these claims at some earlier juncture. He does not allege the discovery of any new facts. Thus, petitioner has failed to make any showing of "cause" excusing his failure to raise this argument at an earlier point in his appeals. Furthermore, plaintiff has failed to show that this alleged constitutional violation has probably resulted in the conviction of one who is actually innocent. Indeed, even without the testimony of Green and Mydell, petitioner's confession to his second wife as well as significant circumstantial evidence, see Byrd v. Armontrout, 686 F.Supp. 743, 755 n. 5 and 761 n. 14, provide an adequate basis for establishing petitioner's guilt. Finally, the Court must conclude that petitioner's claim is without merit. Petitioner has failed to offer any fact establishing that either Mydell or Green was a "government plant" or working on behalf of the "government". Ground B will be dismissed.

B. GROUND "C"
Ground C alleges prosecutorial misconduct. Specifically, petitioner notes that the state denied that it had made a deal with O.C. Green in return for his testimony. The state also represented that it had no knowledge of any deal between Green and the State of Georgia, where Green faced serious criminal charges, in return for his testimony. Furthermore, the state asked Green in the presence of the jury whether any promise had been made to him with respect to the charges pending against him in Georgia, and Green responded that no promises had been made. Petitioner notes, however, that three days after petitioner's jury recommended a sentence of death, authorities in Georgia entered an agreement with Green wherein they agreed to drop pending armed robbery and murder charges against Green in return for Green's testimony with respect to charges pending against petitioner in Georgia. Petitioner argues that this development indicates that the state withheld and/or concealed information that would have enabled petitioner to cast doubt on Green's credibility.
Petitioner claims that he failed to raise this argument in his previous petitions because appointed counsel only recently received documents revealing O.C. Green's plea agreement from petitioner's other attorneys. Even assuming that petitioner's explanation for the belatedness of his claim rises above attorney error or inadvertence, petitioner cannot show prejudice. Indeed, the Court notes above that absent the testimony of Green and Mydell, the state presented sufficient evidence of petitioner's guilt. This Court cannot conclude that the factfinder would have a reasonable doubt respecting guilt absent the testimony of Green. Furthermore, even accepting petitioner's allegations as true, petitioner's claim does not suggest that an innocent man has been wrongly convicted. Finally, petitioner's claim is based entirely upon speculation. Petitioner does not offer any evidence that the prosecutor even knew that such a deal was in the making, much less that the prosecutor withheld or concealed evidence of a deal between Green and the State of Georgia. Ground C will be dismissed.

C. GROUND "D"
Ground D alleges that the state failed to disclose exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Specifically, petitioner refers to police reports indicating that specific individuals other than petitioner had admitted to the crime. These reports also indicate that fingerprints were found at the scenes of the crime, but do not indicate to whom the prints belonged or where they were found. Furthermore, the reports indicate that keys were found at the scene of the crime, which did not belong to Byrd.
Petitioner utterly fails to offer an explanation as to why these arguments were not raised in earlier petitions. As such, he has failed to meet his burden of showing cause for his omission. Furthermore, even assuming that the "evidence" to which petitioner *1342 refers had been presented at trial, this Court cannot conclude that the factfinder would have a reasonable doubt with respect to guilt, particularly in light of the testimony relating petitioner's confessions and other evidence that the Court references above. Petitioner cannot show prejudice. Nor can he show that the alleged constitutional violation has probably resulted in the conviction of one who is actually innocent. Accordingly, Ground D will be dismissed.

D. JURY INSTRUCTIONS
Grounds A and G raise, for the first time, objections to the jury instructions employed during the sentencing phase of petitioner's trial. Both grounds refer to the same group of instructions:
Instruction 54
In determining the punishment to be assessed under Count IV against the defendant for the murder of Judy Cazaco, you must first unanimously determine:
1. Whether the murder of Judy Cazaco was committed while the defendant was engaged in the commission of the capital murders of James Wood, Edna Ince and Carolyn Turner.
2. Whether the defendant murdered Judy Cazaco for the purpose of receiving money or anything of monetary value.
You are further instructed that the burden rests upon the state to prove beyond a reasonable doubt at least one of the foregoing circumstances, and that it is an aggravating circumstance. The defendant is not required to prove or disprove anything.
Therefore, if you do not unanimously find from the evidence beyond a reasonable doubt that at least one of the foregoing circumstances exist and that it is an aggravating circumstance, you must return a verdict fixing the punishment of the defendant at imprisonment for life by the Division of Corrections without eligibility for probation or parole until he has served a minimum of fifty years of his sentence.
Instruction 55
If you find and believe from the evidence beyond a reasonable doubt that one or more of the circumstances submitted in Instruction Nos. 51, 52, 53, 54 exists and that at least one of them is an aggravating circumstance, it will then become your duty to decide whether a sufficient aggravating circumstance or circumstances exist to warrant the imposition of death as punishment of defendant. In deciding that question you may consider all of the evidence relating to the murders of James Wood, Edna R. Ince, Carolyn Turner and Judy Cazaco.
You may also consider any of the aggravating circumstances referred to in Instruction No. 51, 52, 53, 54 which you found beyond a reasonable doubt.
If you do not unanimously find from the evidence beyond a reasonable doubt that a sufficient aggravating circumstance or circumstances exists to warrant the imposition of death as defendant's punishment, you must return a verdict fixing his punishment at imprisonment for life by the Division of Corrections without eligibility for probation or parole until he has served a minimum of fifty years of his sentence.
Instructions 56-59[8]
If you decide that a sufficient aggravating circumstance or circumstances exist to warrant the imposition of death, as submitted in Instruction No. 51, it will then become your duty to determine whether a sufficient mitigating circumstance or circumstances exist which outweigh such aggravating circumstance or circumstances so found to exist. In deciding that question you may consider all of the evidence relating to the murder of James Wood.
You may also consider:
1. Whether the defendant has no significant or prior criminal activity.

*1343 2. The age of the defendant at the time of the offense.
You may also consider any circumstances which you find from the evidence in extenuation or mitigation of punishment. If you unanimously decide that a sufficient mitigating circumstance or circumstances exist which outweigh the aggravating circumstance or circumstances found by you to exist, then you must return a verdict fixing defendant's punishment at imprisonment for life by the Division of Corrections without eligibility for probation or parole until he has served a minimum of fifty years of his sentence under Count I.
Instruction 60
Even if you decide that a sufficient mitigating circumstance or circumstances do not exist which outweigh the aggravating circumstance or circumstances found to exist, you are not compelled to fix death as the punishment. Whether that is to be your final decision rests with you.

1. GROUND "A"
In Ground A petitioner argues that Instructions 56-59 prohibited the jury from considering mitigating evidence unless such circumstances were unanimously found to exist. Petitioner argues that this instruction prevents the jury from giving full consideration and effect to all mitigating circumstances in violation of McKoy v. North Carolina, ___ U.S. ___, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990), Mills v. Maryland, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), and Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976).
The only justification that petitioner offers for failing to raise this claim at an earlier date is that it was omitted through "simple, excusable inadvertence". The Court notes above, however, that attorney error or inadvertence short of ineffective assistance of counsel does not constitute "cause". Although petitioner does not expressly argue that some intervening change in the law justifies the belated nature of this claim, he does offer two recent Supreme Court decisions, McKoy and Mills, in support of his argument. Insofar as petitioner implies that these cases break new ground or depart from prior precedent, this Court must respond that they do not. The requirement that juries in capital cases be permitted to consider all mitigating factors and aspects of a defendant's character and to give effect to that evidence was firmly established in Eddings and Lockett. Mills and McKoy are based upon this principle and both rely on the Eddings and Lockett line of cases; they represent a clear application of existing law. See Penry v. Lynaugh, 109 S.Ct. at 2944-47 (rule that jury be given instructions allowing it to consider mitigating evidence and give effect to such evidence is not new rule, but is dictated by Eddings and Lockett). Thus, although petitioner is not prevented from relying on Mills and McKoy under the retroactivity bar of Teague v. Lane, he cannot show cause for his failure to raise the argument contained in Ground A in an earlier petition. Because Mills and McKoy are based upon decisions that preceded petitioner's trial and initial appeal, petitioner cannot argue that he "lacked the tools" to construct his arguments and that "cause", therefore, existed which excuses his procedural default. See Leggins v. Lockhart, 822 F.2d 764, 768 (8th Cir.1987).
Furthermore, even if petitioner were not procedurally barred from raising this claim, his claim is without merit. In Mills v. Maryland the United States Supreme Court held that the jury instructions in that case could reasonably be read to require that unless all twelve jurors unanimously agreed that a particular mitigating circumstance existed, no juror could consider that mitigating evidence. The Court found the imposition of the death penalty unconstitutional. Likewise, in McKoy v. North Carolina, the Supreme Court held that an instruction that allowed a jury to consider only mitigating circumstances that it unanimously found to exist was constitutionally infirm. This result was reached despite *1344 the presence of an instruction that permitted the jury to recommend life imprisonment even if the jury found several aggravating circumstances and no mitigating circumstances.
At no point were the jurors in the instant case instructed that they must unanimously find that mitigating circumstances exist before considering such circumstances. They were instructed that they must unanimously find beyond a reasonable doubt that aggravating circumstances existed. They were instructed that they must unanimously find beyond a reasonable doubt that such aggravating circumstances warranted the imposition of death. They were told that if they unanimously decided that mitigating circumstances outweighed aggravating circumstances, they must fix punishment at life imprisonment. Were the instructions to end at this juncture, then a danger might exist that the jury could have concluded that they must unanimously find mitigating circumstances. However, Instruction 60 followed 56-59 and advised the jury what to do if they did not find unanimously that mitigating circumstances outweighed aggravating circumstances. Instruction 60 advised the jurors that if they reached this juncture, they were not compelled to fix death as punishment, but, rather, the decision of whether to impose death was left entirely to them. Unless the jury in petitioner's case ignored the instructions or failed to consider all of the instructions in the order that they were presented, they could not have reasonably concluded that a unanimity requirement existed. See also, Gilmore v. Delo, No. 89-1167C(2), slip op at 4-7, 1989 WL 109554 (E.D.Mo. June 20, 1989), appealed, No. 89-2234EM (8th Cir.); Laws v. Armontrout, No. 89-1115C(3), slip op. at 1 (E.D.Mo. June 16, 1989), aff'd on other grounds, No. 89-1985EM (8th Cir., June 19, 1989) stay granted, ___ U.S. ___, 109 S.Ct. 3205, 105 L.Ed.2d 713 (1989). Because this is an assumption we cannot indulge, Ground A will be dismissed.

2. GROUND "G"
In Ground G petitioner argues that Instructions 54-56 served to shift to petitioner the burden of proving mitigating circumstances that "outweigh" aggravating circumstances. Petitioner argues that because the state was required to prove aggravating circumstances beyond a reasonable doubt, if petitioner was to prove mitigating circumstances that outweighed aggravating circumstances, then, implicitly, petitioner also was required to prove mitigating circumstances beyond a reasonable doubt. Petitioner argues that such a requirement violates Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). He also notes that the question of whether a defendant in a capital case can be required to prove mitigating circumstances by a preponderance of the evidence is currently pending before the United States Supreme Court in Walton v. Arizona, No. 88-7351. Finally, petitioner argues that if the jury instructions are not to be interpreted in the manner he suggests, then they are at least so confusing that the Court cannot determine whether the jury reached its conclusion on the basis of an unconstitutional understanding. Thus, petitioner argues, under Francis v. Franklin, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1965), petitioner's death sentence must be set aside.
Because Ground G of petitioner's application is based upon the same line of cases as Ground A, and because petitioner fails to suggest any cause for his failure to raise this claim at an earlier date, the Court finds, for the same reasons set forth with respect to Ground A, that the instant claim is an abuse of the writ and that petitioner is procedurally barred from bringing it in a successive petition. Furthermore, the Court finds that plaintiff's argument regarding the burdens imposed under the jury instructions and potential confusion are without merit.
Following is a plain, common-sense reading of the jury instructions: (1) The jurors are advised in Instruction 54 that they must unanimously decide whether any aggravating circumstance exists, and if one does not, only a life sentence may be imposed; (2) In Instruction 55 they are advised *1345 that if aggravating circumstances exist, they should determine whether the aggravating circumstances warrant the imposition of death, and if they do not unanimously so find, only a life sentence may be imposed; (3) If the jurors make it past Instruction 55, then they are advised in Instructions 56-59 that they must decide whether mitigating circumstances exist, and if they do find mitigating circumstances, they must decide whether they outweigh aggravating circumstances; (4) If the jurors unanimously find that mitigating circumstances outweigh aggravating circumstances, then only a life sentence may be imposed; (5) Finally, Instruction 60 advises the jurors that if mitigating circumstances do not outweigh aggravating circumstances, they are not compelled to fix death as punishment, but rather, the decision to impose death rests with them.
This Court finds that the instructions, read as a whole and in the proper order, are neither confusing nor misleading; certainly not to the extent that they risk an unconstitutional understanding in violation of Francis v. Franklin. Furthermore, the instructions do not instruct the jury that mitigating circumstances must outweigh aggravating circumstances if the defendant is to avoid the death penalty. As the Court notes above, at only one point was the jury instructed that it must consider whether mitigating circumstances outweighed aggravating circumstances, and if the jury so found they were prohibited from imposing any sentence other than life imprisonment. Again, were the instructions to end at this juncture, then a danger might exist that the jury would misinterpret defendant's burden and conclude that if mitigating circumstances did not outweigh aggravating circumstances, death was mandatory. Instruction 60, however, again clarifies any ambiguity.
Finally, the pendency of Walton v. Arizona before the United States Supreme Court does not provide justification for delaying this Court's decision. Any new rule announced in Walton could not be applied retroactively in light of Teague v. Lane. Accordingly, Ground G will be dismissed.

III. Petitioner's Belated Claim

On March 23, 1990, after the state had responded to petitioner's supplemental application for federal habeas corpus and after the parties had presented their respective positions at oral argument, but before this Court had an opportunity to issue this written memorandum, petitioner lodged yet another ground for habeas corpus relief with this Court. This occurred while a temporary stay was in effect, which this Court issued solely for the purpose of enabling the Court to give considered judgment to petitioner's claims. Petitioner's attempt to supplement a delayed, successive petition with a further delayed, successive ground for relief provides yet another illustration of the difficulties that a Court faces with successive applications for habeas corpus relief. Nevertheless, this Court will grant petitioner leave to file this additional ground; however, as the Court concludes below, petitioner's claim is procedurally barred and lacks merit.
Petitioner's supplemental Ground I alleges that Missouri imposes the death penalty disproportionately in all cases and in this case in particular. Petitioner suggests that this claim is unexhausted and that this Court should stay the instant proceedings until petitioner has pursued relief in the state courts. Exhaustion is not an absolute bar to this Court's consideration of habeas corpus claims. Chitwood v. Dowd, 889 F.2d 781, 784-785 (8th Cir.1989). Indeed, in the case of a successive petition, exhaustion is usually the least of a petitioner's procedural problems. See generally, Id.; Mercer v. Armontrout, 864 F.2d at 1433. In the instant case, petitioner has already raised one variation of a proportionality claim in his first petition wherein he alleged that in Missouri the death penalty is sought and inflicted disproportionately against blacks. See Byrd v. Armontrout, 686 F.Supp. at 785. Assuming that petitioner's most recent disproportionality claim is not the "same ground" that was presented in his prior application to this Court, and assuming that this Court's prior determination was not on the merits, petitioner's latest claim *1346 must be treated as a "new claim". As the Court notes above, however, a petitioner must show both "cause" and "prejudice" to avoid a procedural bar to bringing new claims. Petitioner fails to suggest any cause for failing to bring this latest proportionality challenge at some earlier date. Furthermore, given that the jury found petitioner guilty of committing multiple killings, this Court cannot conclude that petitioner could show "prejudice" under either Wainwright v. Sykes, or the heightened standard under Murray v. Carrier even if the Missouri Supreme Court conducted no proportionality review. See Pulley v. Harris, 465 U.S. 37, 104 S.Ct. 871, 879, 79 L.Ed.2d 29 (1984) (state supreme court proportionality review constitutionally superfluous).
Finally, this Court notes that on petitioner's direct appeal, the Missouri Supreme Court conducted a proportionality review and found that petitioner's sentence of death was not disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. State v. Byrd, 676 S.W.2d 494 (Mo.1984) (en banc). This Court believes that these findings are entitled to the presumption of correctness under 28 U.S.C. § 2254(d). Furthermore, even absent the presumption of correctness, this Court would concur in the Missouri Supreme Court's findings with respect to proportionality. With respect to petitioner's facial challenge to the constitutionality of Missouri's death penalty scheme, this Court likewise finds that petitioner's claim is without merit.
Accordingly, and for the foregoing reasons, petitioner's application for federal habeas corpus relief under 28 U.S.C. § 2254 will be dismissed in its entirety.

ORDER
Pursuant to the memorandum filed herein this day,
IT IS HEREBY ORDERED that petitioner be and is granted leave to file his supplement to petition for writ of habeas corpus.
IT IS FURTHER ORDERED that petitioner's motion to hold proceedings in abeyance pending completion of state habeas corpus proceedings and to further stay execution be and is denied.
IT IS FURTHER ORDERED that petitioner's application for a writ of habeas corpus be and is dismissed.
IT IS FURTHER ORDERED that petitioner be and is granted a certificate of probable cause for appeal.
NOTES
[1] Rather than engage in a lengthy discussion of the history of this case, the Court will rely on the Eighth Circuit's decision in Byrd v. Armontrout, 880 F.2d 1, 4 (8th Cir.1989), and the previous cases cited therein to provide the necessary procedural and factual background. The Court would add that the United States Supreme Court denied the petition for writ of certiorari with respect to the first petition on March 5, 1990. On March 8, 1990, the Missouri Supreme Court set March 22, 1990, as petitioner's execution date. On March 19, 1990, petitioner filed the instant petition for writ of habeas corpus. After respondent filed his response and oral argument by the parties, this Court stayed petitioner's execution until Wednesday, March 28, 1990, in order that the Court might prepare the instant order and memorandum.
[2] The petition actually lists nine grounds for relief, A through I. Petitioner, however, failed to brief Ground I, and petitioner indicated during oral argument that the Court need not consider Ground I. After oral argument, however, and before this Court was able to issue a written opinion, petitioner submitted a new "Ground I", which the Court discusses below at pp. 1345-1346.
[3] A reading of the trial transcript clearly indicates that petitioner's trial was hard fought throughout. Petitioner's two defense counsel aggressively pursued strategies both before the jury and in proceedings outside the hearing of the jury. Petitioner's case was defended every step of the way. The decision to call Ford as a witness was a difficult one. However, by this time of the trial, it was obvious that the state had constructed a solid case against petitioner. Reading a trial transcript rarely gives the true flavor of a trial or of the effect of a witness' testimony. Particularly in the context of the entire case, the calling of Ford as a witness fails to support petitioner's claim of ineffective assistance of counsel. Thus, the facts in the present case differ widely from the facts in the Seventh Circuit's recent decision in Harris v. Reed, 894 F.2d 871 (7th Cir.1990), which petitioner has just recently cited in support of his position.
[4] See discussion below at pages 1339-1340.
[5] Petitioner has not suggested that Penry is an intervening change in the law. Nevertheless, because petitioner cites Penry in support of this argument, the Court will consider whether Penry marked such a change in the law that petitioner could not reasonably have been expected to raise this argument in his first petition.
[6] Of course, to establish a claim of ineffective assistance of counsel under Strickland v. Washington, petitioner must likewise establish "actual prejudice": "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Strickland, 466 U.S. at 695, 104 S.Ct. at 2068. See also Mercer, 864 F.2d at 1434.
[7] Under Reed v. Ross, 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984), a petitioner can show cause for failure to raise a claim in an earlier petition where a constitutional claim was "so novel that its legal basis [was] not reasonably available to counsel". Id. at 16, 104 S.Ct. at 2910. The Eighth Circuit held in Leggins v. Lockhart, 822 F.2d 764 (8th Cir.1987), that where "the legal basis for making the constitutional claim was available and other defense counsel had perceived and litigated the claim, it cannot be said that ... counsel so lacked the tools to construct [the] constitutional argument before the state court that cause existed which excuses the procedural default." Id. at 768. Given the similarity between the test for a "novel" claim under Reed and a "new rule" under Teague, it is difficult to imagine that a petitioner could discover a legal development that did not announce a new rule under Teague, but was sufficiently novel under Reed to qualify as an "intervening change in law".
[8] Because petitioner received four death sentences, four such instructions were submitted to the jury. Thus, the references to other instructions and references to victims' names varied according to the particular count upon which a given instruction was based.